IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Keith Sanders, <br><br> Plaintiff, <br><br> v. <br><br> Metropolitan Atlanta Rapid Transit Authority (MARTA), Thomas Young, individually and in his former official capacity as Assistant General Manager, and LaShanda Dawkins, individually and as MARTA's Assistant General Manager, Human Resources, <br><br> Defendants. | Civil Action No. <br><br> <u>Jury Trial Demanded</u> |

**PLAINTIFF'S INITIAL COMPLAINT**

Plaintiff Keith Sanders ("Plaintiff" or "Sanders"), brings claims for race discrimination and retaliation against his former employer, Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). He also brings claims for race discrimination and retaliation against both MARTA and the individual Defendants under 42 U.S.C. § 1981 ("Section 1981") and the Fourteenth Amendment Equal Protection Clause of the United States Constitution via 42 U.S.C. § 1983 ("Section 1983"). Plaintiff seeks declaratory and injunctive relief, damages, and his attorneys' fees and costs.

## JURISDICTION AND VENUE

1. Plaintiff's claims under Title VII, 42 U.S.C. §1981 and the Fourteenth Amendment (actionable via Section 1983) arise under the Constitution and laws of the United States and present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343 (3) and (4) and 1337.

2. This Court is a proper venue for Plaintiff's claims pursuant to 28 U.S.C. §1391(b), because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

3. Sanders is a former employee of MARTA who lived and worked in Atlanta and subjects himself to this Court's jurisdiction.

4. MARTA is a governmental authority headquartered at 2424 Piedmont Rd., Atlanta, GA 30324-3311 that provides mass public transportation to the Atlanta metropolitan area.

5. At all times relevant to this Complaint, MARTA operated under the laws of the State of Georgia, transacted business in this State and judicial District, and maintained facilities and operations in this State and District.

6. MARTA is engaged in an industry affecting commerce, namely the planning, building, maintenance, and operation of a comprehensive bus and rail system in the metropolitan Atlanta, Georgia area, and all times relevant to this

lawsuit, MARTA employed in excess of five hundred employees.

7. Pursuant to O.C.G.A. § 9-11-4(e)(5), MARTA may be served with process by serving a copy of the Complaint and Summons on Jeffrey A. Parker, General Manager/Chief Executive Officer of MARTA, at MARTA's headquarters at 2424 Piedmont Road, NE, Atlanta, Georgia 30324.

8. Defendant Young is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

9. He may be served with process via personal service at MARTA or at his residence.

10. Defendant Dawkins is now and at all times relevant hereto has been an Assistant Manager, Human Resources at MARTA. She can be served at MARTA headquarters at 2424 Piedmont Road, NE, Atlanta, Georgia 30324.

## SATISFACTION OF EEOC PREREQUISITES

11. At all times relevant to this Complaint, MARTA was Sanders' "employer" within the meaning of Title VII.

12. At all times relevant to this Complaint, Sanders was MARTA's "employee" within the meaning of Title VII.

13. Plaintiff filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on March 5, 2019, alleging sufficient facts to fairly place MARTA on notice of the Title VII claims Sanders

brings in this lawsuit.

14. Sanders filed a second EEOC charge on April 12, 2019 alleging he was retaliated against by being terminated that day, alleging sufficient facts to fairly place MARTA on notice of the Title VII claims Sanders brings in this lawsuit.

15. Sanders timely filed both charges of discrimination within 180 days of the date of each alleged act of discrimination or retaliation.

16. The EEOC issued a Notice of Right to Sue dated September 23, 2020, and Sanders timely files this lawsuit within 90 days of receiving his Notice of Right to Sue.

17. Sanders has exhausted the administrative perquisites to filing his Title VII claims.

## FACTUAL ALLEGATIONS

18. Plaintiff, an African-American male, was hired by MARTA on or about August 6, 2017 to the position of Director of Bus Transportation, reporting to the Assistant General Manager of MARTA.

19. In this position Plaintiff was responsible for all regular bus operations, including three bus garages operated by MARTA (Laredo, Perry and Hamilton), all of the employees in the garages, and the budget for bus operations.

20. At the time Plaintiff was hired, MARTA had two other Director positions in place that also reported to the Assistant General Manager: Director of Rail

Operations and Director of Mobility (the portion of MARTA operations that provides specialized services to transit riders with disabilities).

21. Defendant Thomas Young, a Caucasian male, served as the Director of Mobility when Plaintiff started at MARTA.

22. When Plaintiff began his employment at MARTA, according to the budget documents and organizational chart, he was to have four General Superintendents reporting straight to him and directly supervise the employees in bus operations, all of whom were assigned to one of the 3 garages.

23. In fact, Plaintiff had four General Superintendents and one Acting General Superintendent, a Caucasian employee named Tammy Reynolds.

24. Prior to Plaintiff's arrival to MARTA, Ms. Reynolds had be appointed to take over the position held by General Superintendent Angela Brown, an African-American employee who had worked for MARTA for more than 25 years.

25. Prior to Plaintiff's hire, Ms. Brown had been moved out of the bus garages, and had been given various special projects; she spent the year prior to Plaintiff's hire working in Mobility and reporting to Defendant Tom Young.

26. Shortly after Plaintiff began his employment, Defendant Young approached Plaintiff and advised him that he needed Plaintiff to prepare the

5

performance review for the previous year for Ms. Brown, even though Plaintiff had not supervised Ms. Brown for any portion of the period covered in the review.

27. At all times relevant hereto, MARTA had a policy in place mandating that employees receive annual performance reviews and that the reviews be completed by the employee's actual supervisor for the period of the review if the supervisor is still employed at MARTA at review time.

28. When Plaintiff advised Defendant Young that he knew nothing about Ms. Brown's performance during the relevant time period, and therefore was not qualified to do the review, Defendant Young simply instructed Plaintiff that he had to do the review.

29. Specifically, Defendant Young instructed Plaintiff to rate Ms. Brown a 2 out of 5 and to place her on a Performance Improvement Plan ("PIP"), and promised that he would provide the information necessary for Plaintiff to give her a poor rating.

30. Over the course of several months, Plaintiff repeatedly informed Defendant Young that he could not prepare the rating for Ms. Brown since he had not supervised her. Plaintiff was unsuccessful in deterring Defendant Young from requiring him to do Ms. Brown's evaluation for the previous fiscal

year.

31. Around the beginning of 2018, Defendant Young was appointed as Interim Assistant General Manager, and became Plaintiff's immediate supervisor.

32. As Interim Assistant General Manager, Defendant Young insisted that Plaintiff complete the poor evaluation and the PIP for Ms. Brown, stating to Plaintiff, "I am giving you a direct order."

33. Under direct orders from Defendant Young, Plaintiff issued Ms. Brown a performance review rating her 2.3 and gave her a PIP.

34. After reviewing his organization's budget and MARTA's policies at the start of his tenure, including the policy titled "Direct Compensation - Performance Management," Plaintiff requested to be allowed to return all the employees assigned to him to their regular assigned role.

35. This would have meant that Ms. Reynolds would have been moved back to her regular position as Superintendent, Laredo Garage, and Ms. Brown would have been moved back to a General Superintendent at one of the 3 garages.

36. This request by Plaintiff was denied on several occasions by Defendant Young and other MARTA managers.

37. In the position of Interim Assistant General Manager, Defendant Young was a final policy maker with regard to hiring, firing and discipline in all bus operations.

7

38. Plaintiff came to believe that MARTA was discriminating against Ms. Brown due to her race within months of his hire, and was not surprised to learn that Ms. Brown had filed EEOC charges before he was hired.

39. Also, Plaintiff quickly realized that MARTA wanted him to prepare and sign the evaluation and PIP for Ms. Brown because a bad review coming from a black supervisor was less damning than from a white supervisor such as Defendant Young.

40. Plaintiff voiced his concerns to Defendant LaShanda Dawkins, MARTA's Assistant Manager of Human Resources, and filed an internal complaint with MARTA about the discriminatory treatment of Ms. Brown, his being forced to rate her poorly when he was not familiar with Ms. Brown's performance, and his being forced to participate in the harassment of Ms. Brown. Ms. Dawkins agreed to investigate the matter, but she failed to do so.

41. Meanwhile, Defendant Young continued to discipline Ms. Brown for errors made by others and for problems she had not caused, despite Plaintiff explaining she was not at fault. Plaintiff believed these actions were discriminatory and filed additional internal complaints of discrimination.

42. Defendant Young appeared to be retaliating against Ms. Brown by taking away her job duties, removing her from her office and forbidding her from going

8

to any of MARTA's bus facilities, even though she was a General Superintendent responsible for supervising some 45 bus supervisors in the bus facilities.

43. For weeks, maybe months, Ms. Brown had no office. When she complained to Defendant Young about her lack of an office, he did nothing.

44. Plaintiff supported Ms. Brown by insisting to Defendant Young that Ms. Brown be given an office in one of the 3 garages so she could perform her job duties.

45. Defendants denied Plaintiff's request and instead Mr. Young finally provided Ms. Brown a tiny office at MARTA's Armour Rail Yard.

46. Plaintiff believed assigning Ms. Brown to an office in a rail yard, as opposed to a bus garage, was not only counter-productive, but clearly retaliatory and kept pressuring for Ms. Brown to be assigned an office in one of the bus facilities.

47. Plaintiff also asked Defendant Dawkins to look into Mr. Young's discriminatory removal of Ms. Brown from her office. This she promised to do, but Plaintiff is aware of no investigation into this allegation done by Defendant Dawkins.

48. In about June of 2018, Ms. Brown filed another charge of race discrimination and retaliation with the EEOC, and also requested an internal

9

investigation be done by Defendant Dawkins.

49. Thereafter, Defendant Young began advocating for Plaintiff to terminate Ms. Brown for poor performance, but Plaintiff steadfastly refused to terminate Ms. Brown, as he did not believe there was a legitimate basis for doing so.

50. As a result of Plaintiff's unwillingness to participate in what he perceived to be inappropriate discrimination and/or retaliation against Ms. Brown, Defendant Young started retaliating against Plaintiff.

51. Defendant Young began sabotaging and publicly criticizing Plaintiff's job performance. For instance, Young knew that Plaintiff's administrative assistant kept Sanders' schedule, so Defendant Young stopped sending emails or notices of the meetings and events for Plaintiff to his assistant. Without notices of the events, Plaintiff's assistant failed to calendar the event for Plaintiff, and Defendant Young chastised Plaintiff for missing meetings.

52. Defendant Young also began undermining Plaintiff by communicating directly with Plaintiff's subordinates, particularly Tammy Reynolds, a white female, without Plaintiff's knowledge, in order to withhold information from Plaintiff and then make it appear as if he did not know what was going on in his area of responsibility.

53. On one occasion a subordinate of Ms. Brown falsified his time record and

Ms. Brown and Plaintiff determined that discipline was in order, but Defendant Young interceded to stop the discipline.

54. Throughout his employment with MARTA, Plaintiff did not receive a single write-up indicating he had behaved improperly or had poor job performance.

55. Plaintiff did receive a poor performance evaluation, but he was never told his job was in jeopardy, nor was he ever placed on a PIP, a prerequisite to a termination for poor performance according to MARTA's policy.

56. On March 5, 2019, Plaintiff went to the offices of the Equal Employment Opportunity Commission (EEOC) for two reasons: first, he wanted to give an affidavit to the EEOC to corroborate some of the facts related to Ms. Brown's EEOC charge and second, he wished to file his own charge of race discrimination and retaliation arising from the constant discriminatory and retaliatory harassment and criticism he was facing at the hands of Defendant Young for supporting Ms. Brown's allegations of race discrimination.

57. On that same day, March 5, 2019, Plaintiff spoke to the investigator handling Ms. Brown's charges of discrimination and committed to paper a statement in support of those charges.

58. Within a few weeks after March 5, 2019, Defendants MARTA, Young and Dawkins all learned of Plaintiff's participation in the EEOC process on behalf of

11

Ms. Brown, and that Plaintiff had filed his own charge of discrimination and retaliation.

59. Upon information and belief, Defendants Young and Dawkins were interviewed by MARTA's legal team as a result of Plaintiff's EEOC filings.

60. Upon learning of Plaintiff's protected activity, Defendants made the decision to terminate Plaintiff's employment and on April 12, 2019 terminated Plaintiff for alleged "poor performance," even though they had never placed Plaintiff on a PIP or never followed progressive discipline regarding Plaintiff.

61. MARTA's progressive discipline policy sets out the circumstances for giving an employee deemed to be performing poorly a PIP that sets out specifics about performance issues in order to give the employee an opportunity to improve his or her performance and provides that a PIP is a prerequisite to terminating any employee for poor performance.

62. The stated reason for Plaintiff's termination, poor performance, is a pretext for discrimination and retaliation.

63. Defendant Dawkins had actual notice of the discrimination and retaliation that Defendant Young was visiting on both Plaintiff and Ms. Brown, but she took no steps to protect Plaintiff from these illegal actions.

64. Other MARTA officials were also aware of the unlawful discrimination

and retaliation, failed to stop the discrimination and retaliation, and allowed Defendant Young terminate Plaintiff's employment without cause and without following MARTA's own policies.

65. Defendants Young and Dawkins acted under color of state law when committing their acts and omissions giving rise to this Complaint, as all of their conduct was perpetuated using the power and authority of their positions as MARTA officials.

66. At all times material to this Complaint, it was clearly established law that subjecting a government employee to discrimination on account of his race violates the Equal Protection Clause.

67. At all times material to this Complaint, it was clearly established law that a governmental employer may not retaliate against an employee because he engages in protected activity by asserting his right to be free of discrimination based on his race, opposes race discrimination, or supports another employee's right to be free from race discrimination.

68. Defendant Young engaged in all of the above-pled unlawful conduct intentionally, willfully and maliciously with regard to Plaintiff and his federally protected rights, or in the alternative with reckless disregard for Plaintiff's federally protected rights.

69. Defendant Dawkins engaged in the above-pled unlawful conduct or failure to act intentionally, willfully and maliciously with regard to Plaintiff and his federally protected rights, or in the alternative with reckless disregard for Plaintiff's federally protected rights.

## COUNT I

<u>Title VII - Race Discrimination Against MARTA</u>

70. Plaintiff hereby incorporates as if set forth fully here paragraphs 1 through 69 of this Complaint.

71. Defendant MARTA's actions in subjecting Plaintiff to harassment and different terms and conditions of employment, using Plaintiff to discipline Ms. Young, and terminating Plaintiff on account of his race constitutes unlawful intentional discrimination in violation of Title VII.

72. Defendant MARTA had actual knowledge of the racial harassment and discrimination against Plaintiff, yet failed to take reasonable preventative or remedial measures to protect Plaintiff.

73. As a result of the unlawful actions of Defendant MARTA, Plaintiff has suffered loss of income and benefits, as well as emotional pain, suffering, mental anguish, loss of reputation and other non-pecuniary losses.

## COUNT II

<u>Title VII - Retaliation Against MARTA</u>

74. Plaintiff hereby incorporates as if set forth fully here paragraphs 1 through 73 of this Complaint.

75. Defendant MARTA's actions in subjecting Plaintiff to harassment and different terms and conditions of employment and terminating his employment in retaliation for Plaintiff complaining of race discrimination and for participating in protected activity to assist a co-worker by giving a favorable statement in support of a co-worker's EEOC charge constitutes unlawful intentional discrimination in violation of Title VII.

76. Defendant MARTA had actual knowledge of the retaliation against Plaintiff, yet failed to take reasonable preventative or remedial measures to protect Plaintiff.

77. As a result of the unlawful actions of Defendant MARTA, Plaintiff has suffered loss of income and benefits, as well as emotional pain, suffering, mental anguish, loss of reputation and other non-pecuniary losses.

## COUNT III

<u>42 U.S.C. §1981 - Race Discrimination Against All Defendants</u>

78. Plaintiff hereby incorporates as if set forth fully here paragraphs 1 through

15

77 of this Complaint.

79. Defendants' actions in subjecting Plaintiff to different terms and conditions of employment on account of his race constitutes unlawful intentional discrimination in violation of Plaintiff's rights pursuant to 42 U.S.C. §1981.

80. Defendants Young and Dawkins acted with malice and reckless indifference to Plaintiff's federally-protected rights.

81. As a result of the unlawful actions of Defendants, Plaintiff has suffered loss of income, as well as emotional pain, suffering, mental anguish, loss of reputation and other non-pecuniary losses.

## COUNT IV

### 42 U.S.C. §1981 - Retaliation Against All Defendants

82. Plaintiff hereby incorporates as if set forth fully here paragraphs 1 through 81 of this Complaint.

83. Defendants' actions in retaliating against Plaintiff for his unwillingness to discipline a subordinate in a racially discriminatory manner or otherwise discriminate on the basis of race against a subordinate, and for complaining of race discrimination on behalf of himself and a subordinate employee constitutes unlawful intentional discrimination in violation of Section 1981.

84. Defendants Young and Dawkins acted with malice and reckless indifference to Plaintiff's federally protected rights.

85. As a result of the unlawful actions of Defendants, Plaintiff has suffered loss of income, as well as emotional pain, suffering, mental anguish, loss of reputation and other non-pecuniary losses.

## COUNT V

### 42 U.S.C. § 1983 - Equal Protection - All Defendants

86. Plaintiff hereby incorporates as if set forth fully here paragraphs 1 through 85 of this Complaint.

87. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws regardless of his race.

88. At all times relevant hereto, the Defendants, acting under the color of law, violated Plaintiff's right to equal protection by discriminating against Plaintiff on account of his race and by retaliating against Plaintiff for refusing, opposing and reporting race discrimination and retaliation, in violation of 42 U.S.C. § l983.

89. MARTA violated Plaintiff's right to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful race discrimination and retaliation.

90. The above acts and activities on the part of Defendants have restrained, coerced and denied, and continue to restrain, coerce and deny to Plaintiff his

rights to equal protection granted by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

91. Defendants Young and Dawkins acted with malice and reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to recover punitive damages against Defendants Young and Dawkins pursuant to 42 U.S.C. § 1983.

92. As a result of the unlawful actions of Defendants, Plaintiff has suffered loss of income, as well as emotional pain, mental anguish, humiliation, loss of reputation and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and judgment as follows:

    a)    adjudging Defendants to have engaged in unlawful employment practices in violation of Title VII, Section 1981 and/or Section 1983;

    b)    enjoining Defendants from engaging in unlawful employment practices in violation of Title VII, Section 1981, and/or Section 1983;

    c)    awarding Plaintiff his lost back pay and benefits and compensatory damages for violation of his statutory rights in an amount to be determined by the enlightened conscience of the jury, including damages for emotional distress and

humiliation;

      d)      awarding Plaintiff punitive damages for the unlawful intentional discrimination and retaliation against him by Defendants Young and Dawkins;

      e)      awarding Plaintiff pre- and post-judgment interest;

      f)      awarding Plaintiff his costs, expenses of litigation and reasonable attorneys' fees;

      g)      awarding Plaintiff front pay in lieu of reinstatement; and

      h)      awarding Plaintiff all other relief to which he is entitled.

Respectfully submitted, this 21st day of December, 2020.

/s/Debra Scgwartz
Debra Schwartz
Georgia Bar No. 631035
James E. Rollins, Jr.
Georgia Bar No. 613825

Schwartz Rollins LLC
945 E. Paces Ferry Road, Suite 2200
Atlanta, GA 30326
404-844-4130 (ph.) 404-404-4135 (fax)
des@GAemploymentlawyers.com